UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10493 GAO

MANUEL ROSA,
    <u>Plaintiff</u>

v.

CITY OF BOSTON,
    <u>Defendant</u>

### **<u>DEFENDANT CITY OF BOSTON'S LOCAL RULE 56.1 STATEMENT OF FACTS</u>**

Pursuant to Fed. R. Civ. P. 56, the Defendant, City of Boston (the City), hereby moves this Honorable Court to dismiss this action by summary judgment. As grounds for this motion, the City submits the attached Memorandum of Law and states the following:

<u>Facts Concerning the Plaintiff's Arrests on the 1993 indictment and subsequent warrants</u>

1. The Plaintiff lost his driver's license in 1992 or 1993. Exhibit A, Deposition of Plaintiff, Manuel Rosa, dated September 23, 2005, page:line 16:14 – 17:24

2. Another person, Luis Santiago, used Manuel Rosa's license as identification when he was arrested in 1993. Exhibit M, Arrest Booking form of Manuel Rosa (a/k/a Luis Santiago).

3. After Santiago's arrest, Santiago defaulted on a court appearance.  Consequently, a warrant was issued in the name of Manuel Rosa.  Exhibit B, Complaint, ¶ 5

4. On March 10, 1997, pursuant to the bench warrant, The Plaintiff was arrested at his home at 523 Geneva Ave. Exhibit A, 19:17 – 20:3; see also Exhibit C, Arrest Booking Form of Manuel Rosa, dated March 10, 1997.

5. The Plaintiff cannot name the officers who arrested him.  Exhibit A, Plaintiff's deposition, 20:1 – 3.

6. The Plaintiff's booking picture was taken and inserted into the City of Boston Police Department's computer system.  Exhibit A, Plaintiff's deposition, 21:18 – 22:8; Exhibit C, 1997 arrest booking sheet.

7. The booking computer's screen was facing away from Rosa as he was being booked, and the booking desk had glass separating himself from the booking officer. Exhibit A, Plaintiff's deposition, 24:5 – 25:24.

8. The Plaintiff spent that night in lock-up.  Exhibit A, Plaintiff's deposition, 27:9 -11.

9. The Plaintiff was presented to the Suffolk Superior Court the following day.  Exhibit A, Plaintiff's deposition, 27:12-19.

10. After hearing from The Plaintiff that the man on the warrant was a different man, the magistrate released

      The Plaintiff and sent him to the Probation Department to get a letter to that effect. Exhibit A, Plaintiff's deposition, 28:7 – 29:20; Exhibit D, Letter from Chief Probation Officer, Suffolk Superior Court, dated March 19, 1997.

11. The March 19, 1997 Probation Department letter did not include a copy of a photo. Exhibit A, Plaintiff's deposition, 30:13 – 22.

12. The Plaintiff was instructed to return to court in two weeks, which he did on March 23, 1997. Exhibit A, Plaintiff's deposition, 40:6 – 41:19.

13. The following year, in March of 1998, The Plaintiff was pulled over by a Boston Police officer for making an illegal u-turn at the intersection of Geneva and Bowdoin Streets in Dorchester. Exhibit A, 34:4 – 35:12.

14. Because the warrant for The Plaintiff was still in the warrant management system, The Plaintiff was arrested and brought to the police station at 50 Gibson Street while his vehicle was towed. Exhibit A, plaintiff's deposition, 36:10 – 38:7.

15. The Plaintiff was subsequently booked, fingerprinted, photographed, and placed in lock-up. Exhibit A, Plaintiff's deposition, 38:8 – 17. See also Exhibit

      E, Arrest Booking Form of Manuel Rosa, dated March 11, 1998.

16. The following day, The Plaintiff appeared before the same judge as he did after his March 1997 arrest. Exhibit A, Plaintiff's deposition, 38:18 – 39:2.

17. After explaining the situation to the judge, The Plaintiff was again released. Exhibit A, 39:10 – 40:5.

18. The Plaintiff received a letter from the Probation Department of Suffolk Superior Court explaining that the warrant for The Plaintiff is incorrect. Exhibit A, 44:22 – 47:7; Exhibit F, Letter from Probation Department, Suffolk Superior Court, dated March 12, 1998.

19. The Plaintiff, in 2000, claims he was arrested and taken to a police station downtown in Downtown Crossing for smoking too close to the entrance of the subway. See Exhibit A, 61:9 – 64:5.

20. Plaintiff claims he was able to explain to the police officers that the warrant was erroneous, and he was released, though there is no evidence other than his own vague testimony that this occurred. Exhibit A, Plaintiff's deposition, 61:9 – 64:5.

21. In January of 2001, plaintiff was again arrested in connection with this warrant while at a store on Bernard Street in Dorchester. Exhibit A, Plaintiff's deposition, 48:5 – 48:11, 53:17 – 54:5; Exhibit G, Arrest Booking Form of Manuel Rosa, dated January 17, 2001.

22. Plaintiff was brought to a police station and he was photographed, searched, and placed in lock-up. Exhibit A, Plaintiff's deposition, 50:10-24.

23. The Plaintiff cannot name any of the police officers who arrested him. Exhibit A, Plaintiff's deposition, 51:1-5.

24. The Plaintiff spent the night in lock-up in Roxbury. Exhibit A, Plaintiff's deposition, 54:15-16.

25. The next day, The Plaintiff was brought before the Court. See Exhibit A, 54:6 – 19.

26. Arthur Kelly was appointed to be his attorney for the January 18, 2001 appearance. Exhibit A, Plaintiff's deposition, 54:20 – 55:23.

27. Mr. Kelly now represents the Plaintiff in this matter. Exhibit A, Plaintiff's deposition, 54:20 – 55:23.

28. On January 18, 2001, The Plaintiff explained his situation to the judge again. Exhibit A, Plaintiff's deposition, 56:14 – 57:20.

5

29. The Court determined that the warrant did not apply to the Plaintiff.  Exhibit A, Plaintiff's deposition, 58:2 – 11.

30. At all times when The Plaintiff was before the court, he was before clerk magistrate Gary Wilson.  Exhibit A, Plaintiff's deposition, 59:3-13.

31. In February 2001, The Plaintiff attended a hearing with Mr. Kelly where the Plaintiff requested that his record be expunged of the arrests in connection with the indictment of Manuel Rosa (a/k/a Luis Santiago). The Court granted the Plaintiff's request.  Exhibit A, Plaintiff's deposition, 59:23 – 60:19; Exhibit N, Order Allowing Motion for Expungement of Records.

32. Since the February 2001 court order, the Plaintiff has not been arrested in connection with this warrant. Exhibit A, Plaintiff's deposition, 60:13-19.

33. Although the testimony is somewhat confusing, The Plaintiff also claims he was arrested at the intersection of Melville and Allston Streets in Dorchester, between 1998 and 2001.  Exhibit A, Plaintiff's deposition, 47:8 – 49:24.

34. There are no Boston Police Department records of this alleged arrest.

35. After this alleged arrest, the Plaintiff did not spend the night in jail. Exhibit A, Plaintiff's deposition, 48:1 – 2.

36. In his Complaint, the Plaintiff states that he was arrested four (4) times in connection with this warrant. Exhibit B, Complaint, ¶ 10.

37. In his deposition and answers to interrogatories, the Plaintiff claims to have been arrested seven (7) times in connection with this warrant. Exhibit I, Plaintiff's Answers to Interrogatories; Exhibit A, Plaintiff's deposition, 61:4-8.

38. In his deposition testimony, the Plaintiff could only clearly remember three (3) arrests and could vaguely remember two (2) others but can provide no details at all regarding any remaining arrests, in particular date of arrest, whether he spent the night in jail, and whether he appeared before a clerk magistrate. Exhibit A, Plaintiff's deposition, 67:1-6.

Facts concerning Plaintiffs arrests for incidents independent from the 1993 indictment

39. In 1999, The Plaintiff was arrested for an incident independent of the 1993 indictment: operating a motor vehicle under the influence of alcohol. Exhibit O,

      OUI Booking sheet, dated March 25, 1999; Exhibit A, Plaintiff's deposition, 43:22 – 44:21.

40. After the OUI arrest, the plaintiff was photographed and spent the rest of the night in lock-up. Exhibit A, Plaintiff's deposition, 71:22 – 72:3.

41. The Dorchester District Court ordered the Plaintiff to attend 40 hours of a counseling program, which he completed. Exhibit A, Plaintiff's deposition, 43:13 – 44:16, 73:12 – 74:15; Exhibit J, Certificate of Completion, dated April 19, 2000.

42. The Plaintiff's driver's license was suspended for ninety (90) days, and he was placed on probation for one year. Exhibit A, Plaintiff's deposition, 72:16 – 73:12.

43. Later, in November of 2001, the Plaintiff was arrested and charged with theft of a motor vehicle. Exhibit A, Plaintiff's deposition, 75:11 – 81:3.

44. The City has records of arresting the Plaintiff on only three occasions in connection with the 1993 indictment.

Facts concerning the Plaintiff's alleged emotional distress

    45. The Plaintiff was not physically harmed as a result of any arrests by the City. Exhibit A, Plaintiff's deposition, 67:7 – 68:9; Exhibit I, Plaintiff's Answers to Interrogatories, Response No. 8.

    46. The Plaintiff has testified to the purely emotional distress he has suffered by being questioned periodically by family members or friends on the state of his case. Exhibit A, Plaintiff's deposition, 68:10 – 69:5, 97:9 – 18.

    47. The Plaintiff stated that he is not "emotionally damaged" in any other way. Exhibit A, Plaintiff's deposition, 69:6 – 8.

    48. He also claims that he is nervous every time he sees a police officer or police vehicle. Exhibit A, Plaintiff's deposition, 96:24 – 97:8; Exhibit I, Plaintiff's Answers to Interrogatories, Response No. 8.

Facts concerning the Plaintiff's alleged other damages

    49. The Plaintiff thinks that he missed a total of fourteen (14) days of work as a result of being arrested in connection with the 1993 indictment, though he does not remember how many days for each

9

arrest or when exactly he missed work.  Exhibit A, Plaintiff's deposition, 92:6-17, 92:21 – 93:7.

50. The Plaintiff claims his car was towed twice when he was arrested and had to pay the tow lot to retrieve his car.  Exhibit A, Plaintiff's deposition, 93:8 – 94:19.

Facts concerning the Warrant Management System

51. The Trial Court works with the Criminal Justice Information System ("CJIS") to provide warrant information to all law enforcement agencies within the Commonwealth.  M.G.L. c. 276, § 23A.

52. The CJIS is an information network operated for law agencies by the Criminal History Systems Board ("CHSB"), an agency within the Executive Office of Public Safety.  M.G.L. c. 276, § 23A.

53. Information entered by the Trial Court is electronically transmitted to the Criminal Justice Information System, administered by the Criminal History Systems Board.  Exhibit K, Warrant Management Handbook, page 6.

54. This information is then immediately available to all law enforcement agencies in the form of a database, the Warrant Management System (WMS) accessible on

computers at police stations and in some police vehicles.  Exhibit K, Warrant Management Handbook, page 6.

55. Law enforcement agencies are not allowed to modify the WMS data entered by the courts.  Exhibit K, Warrant Management Handbook, page 16.

56. A default warrant is an arrest warrant that is issued by the Trial Court when a criminal defendant fails to appear for a scheduled court hearing.  Exhibit K, Warrant Management Handbook, page 3.

57. When a warrant is recalled or removed, the Trial Court clerk's office is required, "without any unnecessary delay," to enter that information into the WMS.  M.G.L. c. 276, § 23A.

58. Law enforcement agencies are not allowed to modify the WMS data entered by the courts.  *Warrant Management Handbook*, Spring 2001, The Commonwealth of Massachusetts Administrative Office of the Trial Court, page 16.

Facts concerning the Boston Police Department Booking Procedure

59. When an individual is arrested by the Boston Police, he is brought to the booking desk.  Exhibit L,

Affidavit of Officer Michael Connolly, dated January 30, 2006.

60. The booking officer is always a different person than the arresting officer. Exhibit L, Connolly Affidavit.

61. At the booking desk, the booking officer asks for the arrested individual's personal information, including date of birth, home address, names of parents, and occupation. Exhibit L, Connolly Affidavit.

62. The booking officer fills out the fields on the Arrest Booking Form in the computer, which faces away from the arrested individual. Exhibit L, Connolly Affidavit.

63. The booking officer fills out the fields for the physical description of the arrested individual. Exhibit L, Connolly Affidavit.

64. The booking officer also takes inventory of everything on the arrested individual's person and documents it. Exhibit L, Connolly affidavit.

65. The booking officer takes note of any scars, injuries, or birthmarks and takes the arrestee's fingerprints. Exhibit L, Connolly affidavit.

66. Digital photographs are taken of the arrested individual: on a frontal view and the other a profile. Exhibit L, Connolly affidavit.

67. The information is shared and compared with the criminal databases of the Commonwealth and the Federal Government.  Exhibit L, Connolly affidavit.

>Respectfully submitted,
>
>DEFENDANT, City of Boston
>Merita A. Hopkins
>Corporation Counsel
>
>By its attorney:
>
>__/s/ Kenneth J. Forton_____
>Kenneth J. Forton, BBO # 651562
>Assistant Corporation Counsel
>City of Boston Law Department
>Room 615, City Hall
>Boston, MA 02201
>(617) 635-4037