THE COMMONWEALTH OF MASSACHUSETTS
ADMINISTRATIVE OFFICE OF THE TRIAL COURT

# Warrant
# Management
# Handbook

## Spring, 2001

For additional copies, please contact:
*Judicial Institute*
Edward W. Brooke Courthouse
24 New Chardon Street, Boston, MA 02114
Telephone (617) 788-6775
Fax (617) 788-8990

THE COMMONWEALTH OF MASSACHUSETTS
ADMINISTRATIVE OFFICE OF THE TRIAL COURT

# Warrant Management Handbook

### Table of Contents

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATUTORY PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    G.L. c. 276, §23A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    G.L. c. 276, §§ 29 to 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        Felony or Misdemeanor Punishable by Imprisonment for More Than 100 Days . 9
        Misdemeanor Punishable By 100 Days or Less . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        Default Warrant for Failure to Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        Fees and Assessments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PROCESSING WARRANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    Issuing and Entering Warrants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        Information Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        Warrants to be Entered into WMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        Where the Information Goes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    CJIS and Law Enforcement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    "Paper Warrants" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    CARI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

LEGACY WARRANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

RELEASE AND CANCELLATION OF WARRANTS . . . . . . . . . . . . . . . . . . . . . . . 18
    Importance of Releasing and Canceling Warrants . . . . . . . . . . . . . . . . . . . . . . 18
    "Located Warrants" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

BAIL AND TRANSPORTATION ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Changes in Bail Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        Bail Determination on Default Warrants . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            Felonies and Misdemeanors Punishable by Imprisonment for More
            than One Hundred Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            Misdemeanors Punishable by Imprisonment for One Hundred
            Days or Less. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        Caution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        Emergency Judicial Response System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TRANSPORTATION BY POLICE OR SHERIFFS' DEPARTMENTS . . . . . . . . . . . . . . . . . 24

MANDATORY DATA ENTRY CONVENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    Party Name and Alias (AKA) Fields . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    Names with Apostrophes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    Hispanic Names/Compound Surnames . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    Names with titles or degrees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Asian Names . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Address Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    Sex Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Race Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Date of Birth Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    Height Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Weight Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    Eye Color Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Hair Color Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Complexion or Skin Tone Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    Social Security Number Field . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    City and Town Codes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    State and Territorial Possession Codes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    Canadian Provinces . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    Mexican States Codes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    Countries/Dependencies/Territories . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

APPENDIX A (Trial Court Forms) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

APPENDIX B (G.L. c. 276, § 23A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

# WARRANT MANAGEMENT HANDBOOK

## A.    INTRODUCTION

Protection from unreasonable arrest is a fundamental right guaranteed by the Constitutions of both the United States and the Commonwealth of Massachusetts. In many instances, law enforcement officers can satisfy this requirement of reasonableness only by first obtaining an arrest warrant from an impartial judge or magistrate.[1]

Arrest warrants have traditionally been divided into two categories, "straight warrants" and "default warrants." A straight warrant is issued for the arrest of a defendant upon a complaint or an indictment. A default warrant is issued for the arrest of a defendant upon his or her failure to appear in court for a scheduled appearance in an on-going criminal prosecution. A default warrant may also be issued "due to [a] person's failure to pay a fine, assessment, court cost, restitution, support payment or other amount as ordered by the court or required by law...." G.L. c. 276, §31.

At least until 1994, the Massachusetts Constitution, the General Laws and court rules did not contain an authoritative definition of an arrest warrant. The elements listed in Mass. R. Civ. P. 6 (b) (1) for the format of an arrest warrant, taken in the aggregate, approximate a definition of an arrest warrant. The statutory definition contained in G.L. c. 276, §32A, "sufficient information electronically appearing in the warrant management system...", is by no means a comprehensive definition of an

---

[1]The term "warrant" includes a variety of writs and other documents, issued by courts and sometimes by executive officers or agencies, authorizing or ordering a government official to perform specific acts within his or her authority. This Handbook, however, is limited to concerns relative to the management of arrest warrants issued by the departments of the Trial Court.

3

arrest warrant but it is the operative definition to be used in conjunction with the Warrant Management System.

Because of the law's former concentration on the possession by law enforcement officers of a written document, i.e. a paper warrant, or, in the alterative, their actual knowledge of its existence, the pre-existing practices and procedures relative to the issuance, tracking, execution, release, recall and cancellation of arrest warrants were often described as "a paper driven system." Continued reliance upon "a paper driven system" in a highly and rapidly mobile society increasingly presented serious practical difficulties for courts and law enforcement agencies alike. In December, 1994 St. 1994, Ch. 247, An Act Further Regulating the Warrant System was enacted. This legislation requires the Trial Court to establish and maintain an automated Warrant Management System ("WMS") to record information as to all arrest warrants issued by any court in the Commonwealth. This information, in turn, is made available to all law enforcement agencies in the Commonwealth through the Criminal Justice Information System ("CJIS") administered by the Criminal History Systems Board ("CHSB"). G.L. c. 276, §23A. This legislation also provides that "a printout of the electronic warrant from the criminal justice information system shall constitute a true copy of the warrant." Ibid.

This Handbook is not intended to be a summary of the substantive and procedural law relative to the issuance and execution of arrest warrants. Instead, it is intended to set forth for the use of Trial Court personnel general principles and uniform practices and procedures for the entry of arrest warrants into WMS and for the management of that system.

4

## B.    STATUTORY PROVISIONS

The issuance of arrest warrants is a judicial function. The execution [2] of arrest warrants is an executive function. Both the judicial and executive branches, however, share a common interest in and concern for the proper management of arrest warrants and for the prompt availability of accurate information regarding those warrants. As a result, the Trial Court was given the responsibility for developing and implementing WMS to provide information to all courts in the Commonwealth and, through an electronic interface with the Criminal Justice Information System, to all law enforcement agencies in the Commonwealth as well. G.L. c. 276, § 23A.

The Registry of Motor Vehicles has a statutory right of access to WMS, through CJIS, in order to check for the existence of outstanding default or arrest warrants in the license issuing, renewal suspension or reinstatement process. G.L. c. 276, § 23A. Section 22(h) of Chapter 90 of the General Laws, as amended by St. 1994, c. 247, § 1, enjoins the Registrar of Motor Vehicles from issuing a license to operate a motor vehicle to "any person against whom a default or arrest warrant issued by any court in the Commonwealth is outstanding." Moreover, the Registrar is forbidden to renew or reinstate a license to operate for any such person. In 2000, another significant statutory revision to the WMS was enacted. St. 2000, ch. 166. This legislation expands the consequences of having an outstanding arrest or default warrant. Under the new law, the drivers' licenses of individuals with outstanding warrants are suspended and will remain so until the warrants are cleared.

---

[2]An arrest warrant, an order to make an arrest, is properly said to be executed, i.e. carried out, by making an arrest. Rule 6 (c) (1), Mass. Rules of Criminal Procedure. On the other hand, a summons, an order to appear in court, is properly said to be served, i.e. delivered. Ibid. Often, however, "serve" is used as a synonym for "execute" with respect to arrest warrants.

5

In addition, various state agencies are able to access warrant information and individuals with outstanding warrants will be denied professional licenses, welfare, workers' compensation and unemployment benefits and will not receive any state tax refund otherwise due to them. The clear intent of this legislation is to increase the consequences of having an outstanding warrant and thereby to provide additional incentive to individuals to clear any and all outstanding warrants that have been issued against them. Another direct consequence is to increase the importance of having timely and accurate information in the electronic system that generates and manages arrest warrants. It is the Trial Court's responsibility to ensure that information entered into and maintained in WMS is timely, accurate and, insofar as practicable, complete.

1.    **G.L. c. 276, §23A**

Under the provisions of G.L. c. 276, § 23A, clerks' offices must enter all arrest warrants issued by the courts, whether straight warrants or default warrants, into WMS. In entering an arrest warrant into WMS, the court must specify the law enforcement agency responsible for serving that warrant. Ordinarily, the law enforcement agency, usually a police department, seeking the issuance of an arrest warrant will be responsible for serving that warrant.

Information entered by a court into WMS is electronically transmitted to CJIS, an information network operated for law enforcement agencies by the CHSB, an agency within the Executive Office of Public Safety. Information transmitted to the automated CJIS network is immediately made available to all police departments and other law enforcement agencies in the Commonwealth via, for example, computer terminals located in police stations and, in many communities, in police cruisers.

Whenever a court is requested to issue a warrant, the requesting party must provide the court with information that is adequate to correctly identify the subject of the warrant. The required information is:

The name of the person to be arrested, and, his or her

- last known address
- date of birth
- gender
- race
- height and weight
- eye and hair color
- the offense or offenses for which the warrant was requested
- the designation of that offense or those offenses as felonies or misdemeanors
- any known aliases, and
- any such information as shall be required for a warrant to be accepted by CJIS.

G.L. c. 276, § 23A as amended by St. 2000, ch. 166, Sec. 14.

Entry into WMS of such information in sufficient detail shall constitute an arrest warrant. G.L. c. 276, § 23A.

An individual or law enforcement official seeking the issuance of a warrant who does not have all of the required information may apply to the clerk for an exemption from the requirement. Such an exemption will automatically be granted upon the request of a law enforcement official or agency. Ibid. Exemptions sought by non-law enforcement personnel should generally not be granted unless

the information provided is sufficient to adequately identify the subject. At a minimum, the name and date of birth must be provided for a law enforcement official to be able to execute the warrant. Clerks should also take all reasonable steps to obtain and/or to provide the necessary information so that the warrant is issued with full information. This includes checking available records, including probation records, where information such as the subject's date of birth may be found. By providing complete information on WMS, the warrant will pass onto CJIS and be available to law enforcement officials. If complete information is not provided, the warrant information may not be able to enter CJIS and therefore law enforcement officials may not learn of the existence of the warrant, jeopardizing police safety. If an exemption is granted and a warrant is issued without full information, the WMS field available for entering that data must be completed using the appropriate code or left blank as indicated in the Mandatory Data Entry Conventions contained at the end of this Handbook.

When an arrest warrant has been issued, court personnel should enter it promptly into WMS with whatever identifying information has been provided. Once an arrest warrant has been issued, it is not the responsibility or prerogative of court personnel to question or challenge its validity. The entry of a warrant into WMS and, in turn, its transmission to CJIS constitutes notice and delivery to the law enforcement agency responsible for serving it. "[A] printout of the electronic warrant from the criminal justice information system shall constitute a true copy of the warrant." G. L. c. 276, § 23A.

Whenever an arrest warrant is recalled or removed, the clerk's office is required, "without any unnecessary delay," to enter that information into WMS - once again, for electronic transmission to CJIS for distribution to law enforcement agencies. Ibid.

8

C.    **PROCESSING WARRANTS**

Under the operation of the earlier "paper driven" system, it was difficult, if not impossible, to know at any one time how many arrest warrants had been issued by the various courts of the Commonwealth or how many active warrants remained in the possession of police departments or other law enforcement agencies. In a highly mobile society, much information relative to arrest warrants was known primarily or even exclusively by local courts and local police departments. Furthermore, there was no effective guarantee that police departments aware of the issuance of a warrant would be timely notified of its release or cancellation. Consequently, WMS was developed to provide all law enforcement agencies and courts statewide with, insofar as possible, accurate and complete information as to outstanding arrest warrants in order to avoid the inappropriate release of persons in custody against whom warrants are outstanding and to avoid the arrest and detention of persons against whom previously issued warrants had been canceled or recalled.

1.    **Issuing and Entering Warrants**

a)    **Information Required**

Warrant information entered into WMS is made available to all police agencies in the Commonwealth through CJIS. Warrant information entered by courts into WMS does not go directly to individual law enforcement agencies but is instead sent to CJIS for distribution. Prior to WMS, police agencies entered their own warrants into CJIS and were required to comply with specific data entry standards, including providing certain required information about the warrant subject. This standardized data entry helped reduce errors among the 276 local police departments that enter data into CJIS. Now that the courts are entering warrants, specific data entry standards must also be used to allow the information to pass onto CJIS.

12

When an arrest warrant is requested or ordered, the clerk's office should, in accordance with the statute, obtain from the police or other party seeking the warrant the following identifying information: the defendant's name, last known address, date of birth, gender, race, height, weight, hair and eye color, the offense or offenses for which the warrant is requested, a designation of those offense or offenses as felonies or misdemeanors and, any known aliases. In addition, the subject's father's and mother's first names, mother's maiden name and the name of the police agency responsible for serving the warrant should be obtained if available. If the information is available to the clerk's office from other sources, such as probation records or other court records, reasonable efforts should be made to supply any missing information. If the required information is not provided or available the warrant is not to issue, unless the clerk, upon request, grants an exception. An exception is to be granted automatically when requested by a law enforcement agency or official. G. L. c. 276, § 23A.

The implementation of WMS has brought the court system into closer contact with law enforcement agencies. Many of the warrants entered by the Trial Court into WMS, primarily those for serious crimes, are subsequently transmitted to law enforcement agencies across the nation. Consequently, as much information as possible should be entered into WMS as accurately and as promptly as possible using the Mandatory Data Entry Conventions as contained at the end of this Handbook. Data entry personnel should never guess, for example, at the spelling of a person's name, or a wanted person's height, weight or date of birth. These are critical data elements that police rely upon when inquiring of WMS incident to making an arrest or releasing a detained person. Furthermore, use of the Mandatory Data Entry Conventions as set forth in this Handbook will facilitate interaction between WMS and CJIS in Massachusetts and between CJIS and the criminal

13

information systems of other states. CJIS, in fact, produces a report on a daily basis that is available to each clerk's office listing the warrants issued the previous day by that court that were not able to enter CJIS and indicating the reason for such failure. This report should be used each morning to correct any data entry errors and/or to supply any available information to enable the warrant to enter CJIS.

If any of the required information is missing, courts may issue warrants only upon granting an express written exemption. (Such exemptions are automatically granted when requested by a law enforcement agent.) When information is missing, or when it is not provided in the standardized manner, the warrant may not be able to enter CJIS. For example, if a date of birth is missing, the warrant information will not pass into CJIS and an electronic 'error message' will be sent to the warrant-issuing court. Courts should make a reasonable effort to obtain and enter all relevant data or supplemental data provided by law enforcement agencies or otherwise available to the courts. Courts should review these 'error messages' each morning to determine whether the missing data is available to the court and can be supplied so as to enable the warrant to enter CJIS.

Receipt by a court of an "error message" from CHSB does not mean that a court has attempted, via WMS, to enter erroneous data into CJIS. Instead, receipt of an "error message" indicates that a court has not provided information needed by CJIS or that the court has provided such information but not in the prescribed format.

### b)     Warrants to be Entered into WMS

Through WMS, all criminal warrants are electronically entered and made available to all police agencies and other court divisions in the Commonwealth. Information relative to arrest warrants issued by the courts in all criminal prosecutions should be entered into WMS. In addition, those

14

warrants issued in juvenile delinquency, youthful offender, and CHINS (Children in Need of Services) proceedings should also be entered into WMS.

Pursuant to G. L. c. 119, §54, prosecutors may seek a grand jury indictment against a juvenile for certain offenses. Although such indictments are returnable to the Superior Court, the prosecution must, in the first instance (except for murder warrants), be initiated in a Juvenile Court or a juvenile session of a District Court. Juvenile murder indictments are now tried in the Superior Court, so any post-indictment murder warrant should be issued by and returnable to the Superior Court. On "youthful offender indictments", while the indictment itself is initially filed (like all indictments) with the Superior Court supervising that grand jury, any subsequent warrant-on-indictment should not be issued by the Superior Court, but only by the Juvenile Court or the juvenile session of a District Court, after the indictment has been forwarded there. In this way, police or correctional authorities will properly deliver the juvenile to the Juvenile Court for arraignment, rather than to the Superior Court, which has no further role in non-murder (youthful offender) juvenile proceedings.

Search warrants, distress warrants for corporate property (G.L. c. 279, §42), civil capiases of all types (including civil contempt capiases in supplementary process, small claims and civil non-support proceedings), warrants issued by the Parole Board (G.L. c. 127, §149), escape warrants issued by the Department of Youth Services (G.L. c. 120, §13), witness capiases (G.L. c. 233, §§ 6 & 13A; G.L. c. 277, §70) and Care and Protection precepts (G.L. c. 119, §24) **are not to be entered into WMS.**

c)    **Where the Information Goes**

**CJIS and Law Enforcement**

When an arrest warrant is entered into WMS, an administrative CJIS message or notice is sent electronically by the CHSB to the law enforcement agency listed by the court as responsible for serving the warrant. The CHSB has suggested that law enforcement agencies should review the warrants appearing in CJIS for accuracy and completeness. Law enforcement agencies are not allowed to modify WMS data entered by the courts and, therefore, courts should anticipate that police agencies will contact the warrant-issuing court to provide additional or corrected identifying information. Appropriate additional information should be accepted and entered by the courts issuing into WMS without delay.

Any law enforcement agency in the Commonwealth can print out a date and time stamped copy of any warrant entered into WMS regardless of which law enforcement agency sought the issuance of that warrant or has been designated as responsible for serving it. Pursuant to G.L. c. 276, §23A, such a copy "shall constitute a true copy of the warrant". Persons relying upon a print out as a true copy of a warrant should, with the passage of time, verify the warrant's continuing validity by checking through CJIS/WMS.

**"Paper Warrants"**

"Paper warrants" will continue to be used for those occasions when warrants are issued outside of regular court hours (nights, weekends and holidays). Upon issuance of a "paper warrant," the police department requesting the warrant should enter that warrant into CJIS. Any "paper warrants" issued outside of regular court hours should be entered into WMS by the appropriate clerk's office as soon as possible on the next court business day. The police department will

16

thereafter be responsible for canceling that warrant in CJIS once that department determines that the court has electronically entered the warrant into WMS. Otherwise, two separate entries will co-exist in CJIS for the same warrant.

The "paper warrant' should also be returned to the clerk's office of the issuing court by the police department for cancellation. The end result of this process should be the existence of only one warrant in WMS. When a person for whom a "paper warrant" has been issued appears in court prior to the entry of that warrant into WMS, the warrant should still be entered into WMS by the clerk's office and released or canceled as appropriate. In this way, the information processed through WMS will serve as a record of the issuance and return of the warrant.

### CARI

There is currently no computerized linkage between WMS and the Probation CARI maintained by the Office of the Commissioner of Probation. In the absence of such a link, clerks' offices are to notify the probation departments in their respective courts of each new arrest warrant (straight and default) and each cancellation of an arrest warrant. Such notification should be given on a daily basis. Local probation offices will then enter that information into the CARI.

### D.    LEGACY WARRANTS

A "legacy warrant" is a descriptive term used to identify a paper arrest warrant that was issued prior to the implementation of WMS and which still remains active. In other words, such a warrant is a "legacy" or "inheritance" from the former "paper driven" system. Legally, there is no difference in the status of a "legacy warrant" and a later issued warrant that has been entered into WMS. Such legacy warrants, however, are not part of WMS and therefore are not generally know to law enforcement agencies. While there is no statutory obligation for clerks' offices to enter

17

"legacy warrants" into WMS, the single warrant management system would be more complete, accurate and effective if all outstanding legacy warrants were to be entered into it. Clerks are strongly encouraged to enter outstanding "legacy warrants" into WMS or to otherwise seek to have those warrants recalled pursuant to Mass. R. Crim. P. 8.

E.    **RELEASE AND CANCELLATION OF WARRANTS**

    1.    **Importance of Releasing and Canceling Warrants**

Prior to the enactment of St. 1994, c. 247, police departments were required to bring persons arrested on misdemeanor warrants to their local court. Those arrested on felony warrants were to be transported to the warrant-issuing court. Arresting police may now bring both misdemeanants and felons arrested on a warrant to the local court. If the warrant offense is bailable, the local court may release the defendant on bail or recognizance or order the defendant transported to the warrant-issuing court. If the warrant-issuing court is not then in session, the local court may order the defendant transported to the jail in the county of the warrant-issuing court and then to the next regular session of the warrant-issuing court. G.L. c. 276, c. 29 as amended by St. 1997, c. 247, §4.

When a court addresses another court's warrant, it must perform a **Release function** (using the Warrant Release window) in WMS so that the warrant-issuing court is electronically notified of the local court's action regarding the outstanding warrant. The warrant-issuing court should then confirm the Release (using the Confirm Released Warrant window) and cancel the warrant. The statute requires clerks to cancel warrants without unnecessary delay. Warrant-issuing courts should not await the appearance of the defendant at that court before confirming the electronic Release message and canceling the warrant but should, instead, do so upon being notified of the second court's action. It is very important for warrant-issuing courts to be promptly notified via the Warrant

18

Release window so that they might have sufficient notice to prepare for a defendant's scheduled appearance.

Upon releasing a defendant on bail or on personal recognizance for an outstanding warrant issued by another court, the releasing court is required by statute to confer with the warrant-issuing court to determine the date on which the defendant must next appear at the warrant-issuing court. Ibid. The releasing court must promptly enter this information into WMS and also so inform the defendant of the date prior to his or her release. Ibid.

Most courts in the Commonwealth have agreed to scheduling instructions for the guidance of a releasing court in determining when a defendant should be directed to appear at the warrant-issuing court. Where such instructions have been adopted, a releasing court, instead of conferring by telephone with the warrant-issuing court, may instead rely upon the information contained in such instructions to determine the date of the defendant's next scheduled appearance at the warrant-issuing court.

The clerk's office at the releasing court should immediately fax a copy of the recognizance form to the clerk of the warrant-issuing court, so that the warrant-issuing court will be aware of and may prepare for the defendant's scheduled appearance.

If, for any reason, the person against whom the warrant was issued fails to appear on schedule as ordered, at the warrant-issuing court, a new default warrant should then be issued by that court. Where the defendant was bailed from another court on a straight warrant, the new warrant would be issued by the warrant-issuing court as a default warrant. Courts should not attempts to "revive" the original warrant if the defendant fails to appear at the warrant-issuing court as scheduled.

When a warrant is served and the defendant is brought before the court, or the court orders a warrant canceled, the clerk's office must enter such information into WMS without delay, but in no event later than the close of business on that court day. Clerks' offices should provide documentation to persons who request documentation of the cancellation of a warrant.

## 2.    "Located Warrants"

Prior to the implementation of WMS, only the law enforcement agency that entered a warrant into CJIS had the authority to cancel that warrant in CJIS. This practice was similar to the Trial Court's former policy that a warrant might be canceled only by the warrant-issuing court. When a defendant is arrested on a warrant entered into CJIS by another police department, the arresting agency will "locate" that defendant in the CJIS file pending cancellation of the warrant by the police department which sought it. The process of "locating," a method of "flagging" outstanding warrants, is intended to alert other law enforcement agencies who may inquire of the defendant through CJIS that the defendant has been arrested by a law enforcement agency even if the warrant still appears to be active in CJIS because the warrant-entering agency has yet to seek cancellation of the warrant. This arrangement has led to a long-standing practice that a police department will not arrest a defendant with an active warrant if that warrant has been "located" but not yet canceled by the warrant entering police department. This practice prevents defendants from being arrested twice on the same warrant and also helps to protect police officers from wrongful arrest actions.

Courts that receive an electronic notice from CHSB (a so-called "error message") that a defendant has been "located" must determine whether the outstanding warrant should be canceled. If, after examination of court records, it appears that the warrant is still active, the warrant should not be canceled. Warrants "located" by law enforcement agencies will automatically be "unlocated" in

20